**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JANET L. THOMPSON,

                Plaintiff,

v.                                 CIVIL ACTION NO.  2:06-cv-00585

VISTA VIEW, LLC.  et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Two groups of summary judgment motions by the defendants are pending before the court.  The first group consists of a Motion for Partial Summary Judgment by defendants Vista View, LLC, Vista View Properties, Vista View Apartments, LP, (collectively "Vista View") and Ten South Management Company ("Ten South").  By their motion, Vista View and Ten South seek summary judgment on eight of the eleven claims against them [Docket 155, 163, 170].[1] The second group of motions is from defendants ADP Total Source FL XI ("ADP TS") [Docket 158] and Scott Canel [Docket 155].  Each of these defendants have filed a Motion for Summary Judgment as to all of the claims against them.  For the reasons stated below, the defendants' motions are **GRANTED**.

**I.**      **Factual and Procedural History**

      **A.**      **Factual History**

---

[1]Vista View and Ten South have moved for summary judgment on Counts I-IV and VIII-XI.  They have not sought summary judgment on Counts V, VI, or VII.

The plaintiff, Janet Thompson, is a "black female over the age of 40." (3d Am. Compl. ¶ 2 [Docket 127].) She alleges that the defendants engaged in discriminatory and retaliatory conduct against her based on her age, gender, and race.

In June 2005, Vista View, LLC, purchased Vista View Apartments, a federally subsidized housing site in Charleston, West Virginia. Ten South manages subsidized housing units in various states, including Vista View Apartments. ADP TS is a human-resources company that delivers and manages employee benefits, manages payroll processing and tax filing, and provides human-resource guidance. Vista View hired ADP TS to handle such matters. Under ADP TS's Client Services Agreement, however, its clients remain responsible for directing their daily business operations. ADP TS's clients also retain control over the essential terms of their employees' employment, such as the hiring, firing, or discipline of employees. (ADP TS Mem. Supp. Summ. J. Ex. 1 at 1 [Docket 158-1].)

Soon after purchasing Vista View Apartments (the "Apartments") in June 2005, Vista View began a multimillion dollar renovation project that was, at least in part, federally funded, with the funds being dispersed through the City of Charleston. (*Id.* ¶ 8.) In June 2005, Ten South's president, Richard Price, hired Thompson to be a supervisor of an unskilled labor crew at the apartments. According to Thompson, Price offered to pay her $12 per hour, and she agreed to that amount.[2] (Thompson Dep. 77:5-16.) Thompson and her crew were responsible for disposing of debris in the units. (Price Dep. 45:20-46:2.) Because a finite number of apartments needed cleaning, Thompson's work was "temporary and intermittent." (*Id.* 132:15-133:19.)

---

[2]Thompson agreed to a wage of $9 per hour for her crew.

2

Thompson alleges that, in September 2005, she learned she was being paid less than younger, white, male supervisors doing the same work that she was doing at the Apartments. (3d Am. Compl. ¶ 14.) When she notified her employer of these alleged disparities, Thompson contends she was terminated in retaliation. This termination allegedly occurred on or about September 29, 2005. (*Id.* ¶ 18.)

During this time, Thompson was also a resident of the Apartments, and she served as president of its resident council. As president, Thompson filed numerous complaints against the defendants with federal agencies, and also held meetings in which she discussed tenant rights and complaints with other residents. (*Id.* ¶¶ 28-32.) In addition to her allegations of discrimination, Thompson alleges that, in retaliation for her actions as president, the defendants twice attempted to evict her, and that they also filed a frivolous criminal complaint against her. (*Id.*) She further alleges that an agent of Vista View Apartments, LP, impermissibly disclosed to other Apartment residents that she had been evicted. (*Id.* ¶ 36.)

**B.     Procedural History**

On July 27, 2006, Thompson filed a *pro se* Complaint in this court based on the aforementioned allegations. (Compl. [Docket 2].) The Complaint named "Vista View, LLC, Vista View Apartments, Vista View Properties, Jane/John Does, individual or corporate" as defendants, and it asserted several civil-rights and retaliation claims, as well as a claim under the Privacy Act of 1974. (*Id.*) On June 11, 2007, Thompson, still acting *pro se*, filed an Amended Complaint in which she added Ten South as a defendant. (Am. Compl. [Docket 42].) Andrew J. Katz appeared as Thompson's attorney on October 16, 2007 [Docket 55], and, on March 18, 2008, Thompson filed a Second Amended Complaint [Docket 71]. The Second Amended

Complaint added two defendants, the City of Charleston and ADP TS, and asserted the same basic allegations against those two defendants.[3]  The Second Amended Complaint also added two state law claims against all defendants.  (*Id.* ¶¶ 20, 22-25.)

In sum, the Second Amended Complaint asserted eleven claims against the defendants: violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(5)(3) (Count I); violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 (Count II); violation of the West Virginia Human Rights Act, W. Va. Code §§ 5-11-1 to 21 (Count III); violation of the Equal Pay Act, 29 U.S.C. § 206(d) (Count IV); violation of the West Virginia Wage Payment and Collection Act, W. Va. Code §§ 21-5-1 to 18 (Count V); retaliation (Count VI); violation of the Fair Housing Act, 42 U.S.C. §§ 3601-3619 (Count VII); violation of the Privacy Act of 1974, 5 U.S.C. § 552a (Count VIII); violation of 42 U.S.C. § 1985 (Count IX); violation of 42 U.S.C. § 1986 (Count X); and violation of 42 U.S.C. § 1981 (Count XI).

On August 11, 2008, ADP TS filed a Motion to Dismiss with the court pursuant to Federal Rule of Civil Procedure 12(b) [Docket 99].  On January 26, 2009, the court granted the Motion with respect to Counts I and II, but denied the remainder of the Motion [Docket 108].

On April 20, 2009, the court granted Thompson's Motion to Amend Complaint to add Scott Canel as a defendant, [Docket 126], and Thompson subsequently filed a Third Amended Complaint, adding Canel as a defendant.  Thompson alleges that Canel "is the sole, or virtually the sole, shareholder and chief executive officer of the Vista View Defendants and Ten South Management." (3d Amend. Comp. ¶ 4 [Docket 127].)  The Third Amended Complaint re-alleges

---

[3]On January 22, 2009, the court granted the City's Rule 12(b)(6) Motion to Dismiss, and the City was dismissed as a defendant [Docket 107].

the eleven claims of the Second Amended Complaint.  On April 30, 2009, ADP TS filed a Motion

to Strike Counts I and II of Plaintiff's Third Amended Complaint, [Docket 131], and the court

granted that Motion on June 5, 2009 [Docket 153].

Thus, all eleven counts of the Third Amended Complaint remain against Vista View, Ten

South, and Scott Canel, but only nine counts – Counts III through XI – remain against ADP TS.

Vista View and Ten South have moved for summary judgment on nine of the eleven counts

(Counts I, II, III, IV, V, VIII, IX, X, and XI), while ADP TS and Scott Canel have moved for

summary judgment as to all of the counts against them.

## II.    Summary Judgment Standard

To obtain summary judgment, the moving party must show that there is no genuine issue

as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

In considering a motion for summary judgment, the court will not "weigh the evidence and

determine the truth of the matter."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Instead, the court will draw any permissible inference from the underlying facts in the light most

favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most

favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete

evidence from which a reasonable juror could return a verdict in his [or her] favor."  *Anderson*,

477 U.S. at 256.  Summary judgment is appropriate when the nonmoving party has the burden of

proving an essential element of her case and she does not, after adequate time for discovery, make

a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

5

(1986).  The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of her position.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude awarding summary judgment.  *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

**III.    Discussion**

      **A.    Defendants Scott Canel ADP TS**

Thompson alleges that she was subject to compensation discrimination, wrongful termination, and wrongful eviction.  Thompson has failed to show, however, that Scott Canel or ADP TS played any part in the allegedly wrongful conduct.  The evidence, viewed in the light most favorable to Thompson, shows that these defendants did not set Thompson's compensation, discharge her from employment, or in participate in the alleged attempt to evict her.

As to Canel, Thompson testified at her deposition that her compensation was set by Richard Price, the president of Ten South.  (Thompson Dep. 77:2-78:23.)  Thompson does not, however, identify any concrete evidence linking Canel to her rate of pay.  Similarly, she has not proffered any evidence that Canel played a role in her termination or eviction.  Indeed, Thompson admitted that she had never even had a direct conversation with Canel.  (Thompson Dep. 86:2-6.)  Thompson's only apparent basis for implicating Canel in the alleged decisions is her "impression" that " [Price] kind of just does whatever [Canel] tells him to do."  (Thompson Dep. 101:1-6.)  This evidence is simply insufficient.  As such, Scott Canel's Motion for Summary Judgment is **GRANTED**.

As for ADP TS, the evidence shows that ADP TS contracted with Vista View as a human-resources firm.  ADP TS, however, lacked authority to hire or fire personnel employed by Ten South or Vista View, or to set their pay.  Rather, it merely served as an administrative arm of those companies.  ADP TS was not involved in Thompson's rate of pay, her termination, her eviction, or in any of the alleged torts that were committed against her.  Therefore, ADP TS's Motion for Summary Judgment is likewise **GRANTED**.

**B.      Vista View and Ten South**

      **I.      Count I (Employment Discrimination under Title VII of the Civil Rights Act of 1964)**

In Count I, Thompson asserts that the defendants violated Title VII of the Civil Rights Act of 1964 by paying her and her crew less money than similarly situated white employees.  She also contends that, after she notified her employer of this alleged discrepancy, she was terminated in retaliation.  (3d Am. Compl. ¶¶ 14-20.)

"Before a plaintiff may file suit under Title VII or the ADEA, he is required to file a charge of discrimination with [the Equal Employment Opportunity Commission ("EEOC")]." *Jones v. Calvert Group, Ltd.*, __ F.3d ___, No. 07-1680, 2009 WL 19133, at *2 (4th Cir. 2009).  Vista View and Ten South contend that they are entitled to summary judgment on Counts I and II, because Thompson has failed to follow Title VII's administrative procedures.  They observe that, while Thompson has filed administrative complaints with the EEOC regarding Vista View Apartments, LP, she has not filed administrative complaints against the other defendants. Therefore, the defendants contend, Thompson has failed to administratively exhaust her claims, and those claims must therefore be dismissed.

Thompson acknowledges that administrative exhaustion is a condition precedent to a plaintiff's filing a lawsuit in federal court. She argues, however, that she has administratively exhausted her claims. She asserts that a "single employer" concept applies, and that under this theory, the defendants' intertwined corporate relationship renders them to be one entity for the purposes of administrative exhaustion. *See Arculeo v. On-Site Sales & Marketing, LLC*, 425 F.3d 193, 198, 201 (2d Cir. 2005) (discussing single-employer theory). Therefore, in Thompson's view, when she filed her EEOC complaint against Vista View Apartments, LP, on November 7, 2005 [Docket 171-1], that complaint was effective as to all of the defendants.

As explained below, it is unnecessary for this exhaustion issue to be resolved in this case. Even assuming a "single employer" theory is even recognized in this Circuit, or that it applies in this case, the defendants are nonetheless entitled to judgment as a matter of law.

To establish a *prima facie* case of compensation discrimination based on race or gender under Title VII, a plaintiff must show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action with respect to compensation; and (4) that similarly-situated employees outside the protected class received more favorable treatment." *White v. BFI Waste Services, LLC*, 375 F.3d 288, 295 (4th Cir. 2004). If the plaintiff makes a *prima facie* showing, then the defendant must "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 646 (4th Cir. 2007). The burden then returns to the plaintiff to show that "the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." *Id.* At this point, "the burden to demonstrate pretext merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Id.* at 647.

8

Thompson has failed to show that she was the victim of an adverse employment action with respect to her compensation or that similarly situated white male employees received more favorable treatment. From the evidence, Thompson agreed to be paid $ 12 per hour – a rate greater than or equal to nearly every other Ten South maintenance employee – to supervise and perform unskilled labor. (Thompson Dep. 77:5-16; Price Dep. 140:13-141:1, 149:1-23; *see also* [Docket 156-3]). The only Ten South maintenance employee paid more was the maintenance supervisor, who was paid fifteen cents more per hour than Thompson. Furthermore, Thompson was eager to accept this wage, (Thompson Dep. 77:7-16), which Price considered to be more than generous, considering the skill level involved (Price Dep. 149:1-23). It is thus clear that Thompson's compensation was not adverse, but was commensurate with the type of work she was to perform.

Likewise, Thompson has not identified similarly situated employees outside of her protected class that were paid more than she was. The only employees Thompson identifies that were paid more than her were employees of other business entities. Thompson argues that employees of Allen Ives Construction Company were paid $10 more per hour than she was. There is no evidence, however, that the defendants had authority to set the wages of these other workers. (Emmons Dep. 46:20-47:12).

Furthermore, Thompson has not brought forward any evidence showing that the defendants' articulated reason for her rate of pay is a pretext for discrimination. Therefore, there is no genuine issue of material fact regarding Thompson's Title VII claim, and Vista View and Ten South are entitled to judgment as a matter of law.

ii.     **Count II (Age Discrimination under the Age Discrimination in Employment Act ("ADEA"))**

By her ADEA claim, Thompson asserts that she "was paid less th[a]n her co-employees under the age of 40 who were doing the same work."  (3d Am. Compl. ¶ 21.)

The ADEA forbids "an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, condition, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  One element of a *prima facie* case of age discrimination under the ADEA is that the plaintiff was treated differently than or replaced by a similarly qualified applicant who was substantially younger than the plaintiff.  *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006); *Dugan v. Albemarle County School Bd.*, 293 F.3d 716, 720-21 (4th Cir. 2002).

Thompson has not proffered any evidence showing that any such employee received more money than she did for the same work.  Nor has she shown that her position was filled by similarly qualified applicants who were substantially younger than her.  Indeed, in her deposition, Thompson stated that she believed she was discriminated against because of her race, not her age. (Thompson Dep. 124:2-8, 127:16-21, 153:8-154:9.)   Accordingly, there is no genuine issue of material fact as to Thompson's age discrimination claim, and the defendants are entitled to judgment as a matter of law.

### iii.    Count III (West Virginia Human Rights Act)

Next, Thompson asserts that the defendants violated the West Virginia Human Rights Act by their acts of discrimination and retaliation.  (3d Am. Compl. ¶ 22.)

To prevail under the West Virginia Human Rights Act, a plaintiff must satisfy the three-part test enunciated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).   *Mayflower Vehicle Systems, Inc. v. Cheeks*, 629 S.E.2d 762, 772 (W. Va. 2006).  Under this test, the plaintiff

10

must show that (1) the plaintiff is a member of a protected class, (2) the employer made an adverse decision concerning the plaintiff, and (3) but for the plaintiff's protected status, the adverse decision would not have been made.  *Id.*  If the plaintiff makes a *prima facie* showing, then the burden shifts to the defendant to give a legitimate, nondiscriminatory reason for the adverse decision.  The plaintiff must then show that the reason proffered by the defendant was not the true reason for the decision, but that it was instead a pretext for discrimination.  *Id.*

As stated above, Thompson has failed to make a *prima facie* showing that, but for her race, gender, or age, her pay would have been different.  There is therefore no genuine issue of material fact regarding Ms. Thompson's claims of compensation discrimination under the West Virginia Human Rights Act, and Vista View and Ten South are entitled to judgment as a matter of law.

### iv.    Count IV (Equal Pay Act of 1963)

In Count IV, Thompson maintains that the defendants violated the Equal Pay Act by paying her "less pay th[a]n the male supervisor and the male laborers doing the same or similar work on the same project."  (3d Am. Compl. ¶ 23.)

To prevail under the Equal Pay Act, a female plaintiff must show that the skill, effort, and responsibility required in her job performance are equal to those of a higher-paid male employee. *Wheatley v. Wicomico County, Md.*, 390 F.3d 328, 332 (4th Cir. 2004).  After she establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the discrepancy.  *Id.*  The defendant must then show that "the wage differential resulted from one of the allowable causes enumerated by the statute."  *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994).  The statute provides an exception to liability if the difference in pay was "made pursuant to (I) a seniority system; (ii) a merit system; (iii) a system which

11

measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."  29 U.S.C. § 206(d)(1).

Under the evidence, Thompson has not even made a threshold showing that a similarly situated male employee was paid a higher wage.  Furthermore, notwithstanding that failure, Vista View and Ten South have shown that the fourth of the enumerated exceptions applies.  As explained above, Thompson's compensation was based on the type of work she was to perform, not her gender.  Accordingly, there is no genuine issue of material fact regarding Thompson's assertions of compensation discrimination under the Equal Pay Act, and Vista View and Ten South are entitled to judgment as a matter of law on this claim.

### v.        Count VIII (Privacy Act of 1974)

Thompson next contends that the defendants violated the Privacy Act when a Vista View agent revealed to another Vista View resident that Thompson was to be evicted from the Apartments.  (3d Am. Compl. ¶ 36.)

The Privacy Act of 1974 was enacted to "protect the privacy of individuals identified in information systems maintained by Federal agencies," and to "safeguard the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records."  *Scrimgeour v. IRS*, 149 F.3d 318, 321 n.3 (4th Cir. 1998).  Generally, the Privacy Act "prohibits a government agency from disclosing an internal record to another person or agency without the consent of the person to whom the information pertains, with certain exceptions."  *Doe v. Nat'l Security Agency*, 165 f.3d 17 (4th Cir. 1998).  While the Privacy Act creates a private right of action for a violation of the Act, such an action "is specifically limited to actions against agencies of the United States Government."  *Unt v. Aerospace Corp.*, 765 F.2d

12

1440, 1447 (9th Cir. 1985); *see also Pennyfeather v. Tessler*, 431 F.3d 54, 55 (2d Cir. 2005); *Brown-Bey v. United States*, 720 F.2d 467, 469 (7th Cir. 1983); *Stoianoff v. Commissioner of Motor Vehicles*, 107 F. Supp. 2d 439, 444-45 (S.D.N.Y. 2000).  Merely receiving federal funding does not render a private business into a government agency.  *See Unt*, 765 F.2d at 1447-48.

Thompson fails to show how the Privacy Act applies to any defendant in this case.  The Privacy Act applies only to federal agencies.  Neither Vista View nor Ten South is a federal agency, and their mere receipt of federal monies to complete this project has not transformed them into one.  Therefore, Vista View and Ten South are entitled to judgment as a matter of law on this claim.

### vi.     Counts IX and X (42 U.S.C. § 1985 and § 1986)

In Counts IX and X, Thompson alleges a conspiracy among the defendants to deprive her of "equal protection of the laws pertaining to, among others, employment, wages, Fair Housing, and privacy."  (3d Am. Compl. ¶ 37.)

Section 1985 is a civil-rights conspiracy statute that imposes civil liability on persons who conspire to deprive the plaintiff of her civil rights on the basis of a class-based, invidiously discriminatory animus.  42 U.S.C. § 1985; *see also Griffin v. Breckinridge*, 403 U.S. 88, 102 (1971).  To state a cause of action under § 1985, a plaintiff must allege: (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury.  *Griffin*, 403 U.S. at 102-03.  The plaintiff must also show that the conspiracy was "'aimed at interfering with rights'" that are "'protected against private, as well as official, encroachment.'"  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (quoting

*Carpenters v. Scott*, 463 U.S. 825, 833 (1983)).  Section 1986 provides a corollary civil cause of action against any person who, knowing of a § 1985 conspiracy and having the power to prevent it, "neglects or refuses to do so."  42 U.S.C. § 1986.  As such, a § 1986 claim necessarily hinges on the success of the corresponding § 1985 claim.

The Supreme Court has recognized that § 1985 reaches purely private conspiracies; state action is not required.  *Griffin*, 403 U.S. at 102-03; *see also Bray*, 506 U.S. at 268.  The Court has also explained, however, that § 1985 "provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates."  *Great American Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979).  In *Novotny*, the Court held that "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)."  *Id.* at 378.  Writing for the Court, Justice Stewart explained that

> [i]f a violation of Title VII could be asserted through § 1985(3), a complainant
> could avoid most if not all of these detailed and specific provisions of the law.
> Section 1985(3) expressly authorizes compensatory damages; punitive damages
> might well follow. The plaintiff or defendant might demand a jury trial. The short
> and precise time limitations of Title VII would be grossly altered.  Perhaps most
> importantly, the complaint could completely bypass the administrative process,
> which plays such a crucial role in the scheme established by Congress in Title
> VII.

*Id.* at 375-76 (internal footnotes omitted).

Here, Thompson makes the same assertions in her § 1985 claim that she does in her Title VII employment discrimination claim.  That is, she contends that she was paid less because of her race and gender.  This avenue of relief has been squarely foreclosed by controlling precedent.  As such, Thompson's § 1985 claim must fail, and the defendants are entitled to judgment as a matter

14

of law on Counts IX and X.[4]

### vii.    Count XI (42 U.S.C. § 1981)

Finally, Thompson simply asserts that the defendants "intervened in the employment contractual relationship . . . in violation of 42 U.S.C. 1981."  (3d Am. Compl. ¶ 39.)

Section 1981 ensures the rights of all citizens "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."  42 U.S.C. § 1981.  To establish a *prima facie* case of discrimination in compensation based on race or gender under § 1981, a plaintiff must satisfy the *McDonnell-Douglas* burden-shifting test.  She must show that (1) the plaintiff is a member of a protected class, (2) the employer made an adverse decision concerning the plaintiff, and (3) but for the plaintiff's protected status, the adverse decision would not have been made.  *Anderson v. Westinghouse Savannah River Co*, 406 F.3d 248, 268 (4th Cir. 2005).  If a § 1981 plaintiff establishes a *prima facie* case of discrimination, then the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason" for the adverse employment action.  *Id*.  Once the defendant articulates such a reason, then the burden returns to the plaintiff to show that the defendants' reasons are pretextual.  *Id.*

Thompson has failed to satisfy the third and fourth elements necessary to her § 1981 claim.  As previously explained, Thompson has failed to show that an adverse employment action was taken with respect to her compensation.  Nor has she shown that similarly situated employees outside of her protected class received more favorable treatment.  Furthermore, even if Thompson were able to make a *prima facie* showing, the defendants would nonetheless be entitled to

---

[4]Thompson's § 1986 claim must fail because she has no cause of action under § 1985.

summary judgment on this claim.  Just like her other discrimination claims, Thompson has failed to produce evidence showing that the defendants' articulated reasons for her rate of pay is a pretext for discrimination.  Accordingly, there is no genuine issue of material fact regarding Thompson's § 1981 claim, and Vista View and Ten South are entitled to judgment as a matter of law.

### IV.    Conclusion

For the reasons stated above, the motions for summary judgment by ADP Total Source FL XI, Inc., and Scott Canel are **GRANTED**.  Likewise, the Motion for Partial Summary Judgment by Vista View, LLC, Vista View Properties, Vista View Apartments, LP, and Ten South Management Company – as to Counts I, II, III, IV, XIII, IX, X, XI – is **GRANTED**.[5]

The Court **DIRECTS** the Clerk to send a certified copy of this Judgment Order to counsel of record and any unrepresented parties.

ENTER:        August 24, 2009

Joseph R. Goodwin, Chief Judge

---

[5]Because the Vista View and Ten South defendants have not moved for summary judgment as to Counts V, VI, or VII, the court makes no ruling as to the evidence supporting those claims.

16